IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BIZZIE WALTERS, et al. | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:10-cv-257-MEF |
| | ) | |
| TODD McMAHEN, et al., | ) | (WO - DO NOT PUBLISH) |
| | ) | |
| DEFENDANTS. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is a nation-wide class action brought on behalf of all hourly-paid workers legally authorized to be employed in the United States who are or have been employed by Perdue Farms, Inc.[1]  ("Perdue") since March 2006 at its fourteen poultry processing facilities. Plaintiffs allege that the many named Defendants and other Perdue officials have conspired to depress wages by knowingly employing large numbers of illegal immigrants and by falsely attesting that these illegal immigrants presented genuine work authorization documentation or identification documents all in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO").  Plaintiffs allege that this scheme emanates from the highest levels of the company at Perdue's headquarters in Maryland and is conducted and carried out in processing plants in Alabama, Georgia, Tennessee, Kentucky, South Carolina, Virginia, North Carolina, Delaware, Maryland, and Indiana.  Additionally, Plaintiffs allege that Perdue's Vice President of Human Resources, Rob Heflin ("Heflin"), participated the

---

[1]  Perdue allegedly claims to be the third largest poultry processing company in the United States of America, with annual sales in excess of $4.6 billion.

conspiracy and is responsible for Perdue's hiring policy.  It is further alleged that Heflin and various regional Human Resources Directors, including Gary Miller ("Miller") directed and approved the alleged illegal hiring scheme from Perdue's corporate headquarters in Maryland.[2]  Numerous motions are pending before the Court, but this Memorandum Opinion and Order addresses only Defendants' Motion to Transfer Venue (Doc. # 61) pursuant to 28 U.S.C. § 1404.  For the reasons set forth below, the Court finds that the motion to transfer venue is due to be GRANTED.

## JURISDICTION AND VENUE

Named Plaintiffs invoke this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c).  Named Plaintiffs contend that venue is proper in this Court because Walters and Hodge live and work in the Southern Division of the Middle District of Alabama and were allegedly victimized by the Defendants' scheme at Perdue's facility there.  Presumably then, Named Plaintiffs contend that venue is proper here pursuant to 28 U.S.C. § 1391(b)(2).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On March 22, 2010, Bizzie Walters ("Walters"), Annie Hodge ("Hodge"), Annette Baldwin ("Baldwin"), Katrena Cooper ("Cooper"), and Barbara Allen ("Allen") (collectively "Named Plaintiffs") filed this lawsuit on behalf of themselves and all those employees in the United States who are similarly situated.  Walters and Hodge are citizens of Alabama and

---

[2]  Heflin and Miller are named defendants in the Amended Complaint (Doc. # 80). The original complaint described their actions, but did not identify them by name.

employees at Perdue's Dothan, Alabama processing facility.  Baldwin and Cooper are citizens of Georgia and employees at Perdue's Perry, Georgia processing facility.  Allen is a citizen of Tennessee and an employee at Perdue's Monterey, Tennessee processing facility. In addition to the processing facilities at which the Named Plaintiffs work, Perdue also operates poultry processing facilities in the following locations in the United States: Cromwell, Kentucky; Dillon, South Carolina; Accomac, Virginia; Bridgewater, Virginia; Concord, North Carolina; Georgetown, Delaware; Lewiston, North Carolina; Milford, Delaware; Rockingham, North Carolina; Salisbury, Maryland; and Washington, Indiana. Named Plaintiffs allege that the named Defendants carried out their illegal scheme at each and every one of these processing facilities.

Named Plaintiffs do not bring suit against Purdue itself.   Instead, they name as defendants a variety of Perdue employees.[3]  One set of defendants are current or former human resources employees, managers, or supervisors in the Dothan, Alabama processing facility: Todd McMahen, Tol Dozier, Nancy Hollis, Alberto Asyn, and Elana Fernandez. Another set of defendants are current or former human resources employees, managers, or supervisors at the Perry, Georgia processing facility: Richard Jamison, Jim Hungate, and Maria Salizar Gonzalez.  Another set of defendants are current or former human resources employees, managers, or supervisors at the Monterey, Tennessee processing facility: Jeff Beckman, Jerry Layne, David Castro, Angie Wood, Julio Unzueta, Emperatriz "Paola"

_____

[3]  In deciding this motion, the Court will rely on the parties identified in the Amended Complaint (Doc # 80), which was filed on June 18, 2010.

3

Beatty.  Another set of defendants are current or former human resources employees, managers, or supervisors at the Cromwell, Kentucky processing facility: Jim Booth, Terry Ashby, Jeanette Cox, Sandra Herrera, Leslie Cox, and Gustavo "Gus" Paez.  Another set of defendants are current or former human resources employees, managers, or supervisors at the Dillon, South Carolina processing complex: Randy Brown, Efrem Andrews, and Gilberto "Fernando" Rivera.  Another set of defendants are current or former human resources employees, managers, or supervisors at the Accomac, Virginia processing facility: Charlie Carpenter, Bennie Gray, and Bel Holden.  Finally, the Named Plaintiffs bring suit against Rob Helfin ("Helfin"), who is Senior Vice President of Human Resources for Perdue and who works in Perdue's corporate headquarters in Salisbury, Maryland, and against Gary Miller ("Miller"), who is regional human resources manager for the Perdue Delmarva region and who works in Perdue's corporate headquarters in Salisbury, Maryland.

The factual allegations of the Complaint and Amended Complaint describe a conspiracy between the defendants to carry out an illegal immigrant hiring scheme at Perdue's facilities.  It is alleged that this scheme saves Perdue millions of dollars in labor costs because the illegal immigrants will work for extremely low wages, will not complain about workplace conditions or injuries, and will accede to Perdue's demands to work harder and longer hours.  Named Plaintiffs contend that if Perdue was not able to hire large numbers of illegal immigrants they would have to pay them and the members of the class they seek to represent significantly higher wages.  It is alleged that Perdue's illegal immigrant hiring scheme violates RICO.  Defendants allegedly employ a variety of methods to accomplish the

scheme including: hiring workers known to have previously worked at Perdue under a different identity; hiring workers known to be illegally in the country and using false or fraudulent identity documents; hiring workers who cannot speak English while claiming to be U.S. citizens fully aware of the requirement that naturalized U.S. citizens be conversant in English and that birthright citizens speak English; hiring workers whose background information is invalid or inconsistent on its face; hiring workers who use dual identities and multiple sets of documents to enable them to work double shifts; falsely attesting under penalty of perjury on I-9 forms required by the government; and coaching illegal aliens at the time of hire to claim a high number of dependents on their tax forms in order to reduce tax withholding.  Furthermore, Named Plaintiffs allege that supervisors frequently tell class members perceived to be underperforming that Mexicans work harder and threaten to replace them with new hires from "the tomato fields" if they do not work harder.  Managers and human resources staff will tip off illegal works prior to any government raid or audit.  Thus, Named Plaintiffs allege that Purdue's hiring practices are in direct violation of the Immigration and Nationality Act and RICO, which makes the employment of illegal immigrants a predicate offense.

Named Plaintiffs seek certification of a class action and appointment of their attorneys in Chicago, Illinois and Hartford, Connecticut as lead counsel for the class.  They also seek treble damages, attorney's fees, costs, preliminary injunction, and permanent injunction.  After service, Defendants filed a number of motions, including the instant motion for transfer of venue.

## DISCUSSION

Section 1404(a) of Title 28 of the United States Code allows a district court to transfer any civil action to a district where it might have been brought to promote the convenience of the parties and witnesses and in the interests of justice.  "28 U.S.C. § 1404(a) places the decision of whether a motion for a change of venue should be granted within the sound discretion of the court."  *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1090 (M.D. Ala.1996); *see also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654 (11th Cir. 1993), *cert. denied*, 513 U.S. 814 (1994); *Holmes v. Freightliner, LLC.*, 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002).

First, § 1404(a) only applies in cases where the plaintiffs' chosen venue is an appropriate venue.  As previously stated, the Court finds that plaintiffs' chosen venue is an appropriate one.  Second, the action may only be transferred to a venue in which the action could have originally been brought.  *See* 28 U.S.C. § 1404(a).  Thus the Court's next inquiry is whether this action could have been brought in venue to which Defendants propose transfer, namely, the United States District Court for the District of Maryland.  The Court finds that the allegations of the Amended Complaint make it plain that a substantial part of the events giving rise to the claim occurred at the Perdue headquarters in Maryland. Accordingly, pursuant to 28 U.S.C. § 1391(b)(2) venue is appropriate there.  Furthermore, Named Plaintiffs argued that the proposed venue to which transfer is sought may only be appropriate under § 1404(a) if personal jurisdiction based on minimum contacts as to at least one defendant exists.  Assuming *arguendo* that this is a correct statement of the law, the

6

Court finds that the District Court of Maryland has personal jurisdiction over at least one of the defendants named in the Amended Complaint.[4] Indeed, two of the defendants, Heflin and Miller live and work in Maryland.

After determining whether the action could have been brought in the transferee district court, the Court must decide whether the balance of convenience favors transfer. *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994). Courts generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency. *See Folkes v. Haley*, 64 F. Supp. 2d 1152 (M.D. Ala. 1999); *Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F. Supp. 281, 282 (M.D. Fla. 1996). As set forth below, the Court is persuaded that in this case, Defendants have met their burden of establishing that Maryland is a substantially more convenient forum.

**Plaintiffs' Initial Choice of Forum**

Section 1404(a) analysis recognizes that the plaintiff's selected forum is presumptively correct, and accordingly, the Court affords deference to a plaintiff's selection.

---

[4] According to Named Plaintiffs' brief there was some question whether a civil RICO action can be brought only in a district in which personal jurisdiction has been established as to at least one defendant by virtue of his minimum contracts or whether RICO allows nationwide service of process and provides a statutory basis for personal jurisdiction. In either case, the Court has personal jurisdiction over Miller and Heflin, who Named Plaintiffs added as Defendants to this action after making this argument.

Federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. *See In re Ricoh Corp.*, 870 F.2d at 573; *Hutchens*, 928 F. Supp. at 1090. As some courts have stated, the weight to be given the plaintiff's forum choice is significant and "will not be disturbed unless the other factors weigh substantially in favor of transfer." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 774 (E.D. Tex. 2000) (citation omitted). The defendant, therefore, bears the burden of demonstrating that the suggested forum is *more* convenient. *In re Ricoh Corp.*, 870 F.2d 570, 572 (11th Cir. 1989). Section 1404(a) allows transfer to a more convenient forum, "but not one which is likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). A court faced with a motion to transfer must engage in an "individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

Importantly, this Court has held that a "[p]laintiff's chosen forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated." *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (Albritton, C.J.) ("The court is motivated to transfer this case, in great part, because it is filed as a nationwide class action."). *See also Koster v. Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs...all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") In this case, Named Plaintiffs have selected the Middle District of Alabama as their forum. Of course,

only a few of the Named Plaintiffs reside in the Middle District of Alabama.  Already some of the Named Plaintiffs are electing to litigate at some distance from their homes.  Moreover, the class of plaintiffs to be represented is a nationwide class action.  Accordingly, this is one of those instances in which plaintiffs' chosen forum is entitled to less deference.

Another feature of this suit requires the Court to give less deference to Named Plaintiffs' choice of forum.  Where, as here, many of the facts underlying the cause of action occurred outside of the District in which the action is brought, the plaintiff's choice of forum is entitled to less deference.  *See, e.g., Gould*, 990 F. Supp. at 1358; *Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991).  Here the acts underlying the suit and giving rise to the cause of action emanated from Maryland and occurred in many states, including Alabama.  This is not a lawsuit focused on wrong-doing in Alabama alone.

**Convenience of the Parties**

Next, the Court must examine the convenience of the parties and of the witnesses.  In this matter, parties are found in several states.  Only two of the five Named Plaintiffs reside in this district; however, none of Named Plaintiffs reside in the District of Maryland.  As for the Defendants, they are found in both in Maryland and the Middle District of Alabama.

A subset of the analysis of the convenience to the parties is a consideration of the location of counsel for the parties.  In the course of discovery, it is counsel and not the parties who are caused to travel to view exhibits or take depositions.  This is often more burdensome than the trial itself which takes place over a much shorter and compressed span of time.

Significantly, Named Plaintiffs selected legal counsel located in cities outside of this district[5] and far away from the witnesses or exhibits located in this state.  Certainly, they must have anticipated some travel by counsel attendant to the litigation.

On the whole, this factor slightly favors denying transfer because of the convenience to the Alabama plaintiffs of litigating near their homes.  It does not significantly favor transfer because more than half of the Named Plaintiffs reside far from this District. Moreover, the location of the lead counsel for the class far from this District evidences an expectation by plaintiff's of litigating from afar.

**Convenience of the Non-Party Witnesses**

As for witnesses, other than party witnesses, the Court is persuaded that the majority of non-party witnesses are not likely to be found in this district, but rather in the District of Maryland.  The Court finds persuasive Defendants' contention that this factor favors transfer.

**Relative Ease of Access to Sources of Proof and Location of Relevant Documents and Availability of Compulsory Process**

Many of the documentary records relevant to the issues in this case are located and maintained in the District of Maryland.  The lawsuit alleges a conspiracy emanating from the very top of the corporate structure.  Key officials of Perdue who work at its corporate

---

[5]  Indeed, the counsel identified as lead counsel for Named Plaintiffs are located in Chicago, Illinois, Mt. Pleasant, South Carolina, and Hartford, Connecticut.  Additional counsel for Named Plaintiffs hail from Birmingham, Alabama, which is located in the Northern District of Alabama.  Only one of the six attorneys representing the Named Plaintiffs lists an address within the Middle District of Alabama.

headquarters in Maryland are allegedly deeply involved in the conspiracy. Documents relevant to this top-down type conspiracy which allegedly reached out across an entire division of Perdue's operation are necessarily located in Maryland. Certainly some may also be found at various processing plants in Alabama, Georgia, South Carolina, Tennessee, Kentucky, etc.,[6] but the allegation is that this conspiracy came from the top and the top is where the key documents will be found. This factor weighs in favor of transfer.

Moreover, a substantial number of non-party witnesses, including other key Perdue officials not made defendants to this action, are located in the District of Maryland. This fact is very important when the Court weighs the convenience of witnesses to this action as well as the availability of compulsory process for witnesses, which would obviously be available in Maryland and not in Alabama. Indeed, the Middle District of Alabama has subpoena power which is quite limited when compared to the geographic scope of the alleged conspiracy. Certainly the witnesses key to the overall conspiracy, as opposed to the operations of the conspiracy at the Alabama facility alone, are within the subpoena power of the Maryland court and not this court. These factors weigh in favor of transfer.

**Financial Ability to Bear the Cost of the Change**

In this case, the Court finds that the financial ability to bear the cost of change neither favors transfer of the case to Maryland, nor retention of the case in Alabama. Named

---

[6] Once again this fact shows that the Named Plaintiffs certainly should have anticipated that the nature of the claims they were shaping in their Complaint would necessitate conducting discovery far from the Court in which they filed suit.

Plaintiffs are individuals spread around the country. Named Defendants are likewise individuals spread around the country. No matter where this case is tried, some of these individuals will be inconvenienced. There is no corporate defendant in this case at this time, and the Court cannot find that the Named Defendants are measurably more able to bear the costs of accessing sources of proof. This is not the typical case where a corporate party can be asked to bear the costs associated with an inconvenient forum.

**Trial Efficiency**

When considering this factor, courts consider the relative congestion of the dockets of the original forum and the forum to which transfer is sought. This Court has consistently heavy civil caseloads. Measured by the number of civil cases assigned to each judge, the docket congestion is more significant in this District than it is in the District of Maryland. The Court is persuaded that this factor favors transfer.

**Public Interest**

Finally, the Court is persuaded that it is in the interest of justice to transfer this case to the District of Maryland. Maryland "has an interest in demanding that its resident corporations adhere to a level of protocol in conducting their business activities, especially when the alleged misdeeds took place within that forum." *Irwin v. Zila, Inc.*, 168 F. Supp. 2d 1294, 1297 (M.D. Ala. 2001). The presence of the corporate headquarters where the scheme was allegedly planned and two of the plants at which it was allegedly implemented in Maryland gives it a more significant public interest than Alabama which is mere home to one processing plant. This factor weighs in favor of transfer.

**Weighing of Factors**

Having considered all the relevant factors and engaged in an individualized consideration of convenience and fairness in this case, the Court finds that the Defendants have met their burden of establishing that the District of Maryland is a significantly more convenient venue for this litigation than the Middle District of Alabama.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED as follows:

(1)  Defendants' Motion for Transfer of Venue (Doc. # 61) is GRANTED.

(2)   It is further ORDERED that this action be, and the same hereby is TRANSFERRED to the United States District Court for the District of Maryland for all further proceedings.

DONE this the 18th day of March, 2011.

/s/ Mark E. Fuller<br>CHIEF UNITED STATES DISTRICT JUDGE